IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOSEPH M. WALLS,
        Petitioner,

V.

WARDEN THOMAS CARROLL,
        Respondent.

NO.

0 5 - 5 8 5



FILED

AUG 1 0 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

MEMORANDUM OF LAW
and
APPENDIX

in support of

WRIT OF HABEAS CORPUS

August 5, 2005

Joseph M. Walls, A.A.S.
DCC #107897 Bldg. S-1
Delaware Correctional Center
1181 Padlock Road
Smyrna, DE 19977

## TABLE OF CONTENTS

Table of Citations                                                        III.

Statement of the Case                                                      1

Reason For Granting The Petition                                           3

Ground One: The Deadly Weapon And Assault                                  3
   Convictions For Possessing Or Use Of A
   Common Baseball Bat Violates Legislative
   Intent, Ex Post Facto, And Due Process

   A. Supremacy Clause Violated                                      4
   B. Ex Post Facto Violated                                         5

      1. Deadly Weapon Indictments                                5
      2. Post-Trial Expansion Of Deadly                           6
         Weapon Definition
      3. Baseball Bat Excluded                                    7

   C. Due Process Violated                                          9
      1. "Use Test" Violated                                    9
         a. Neither Anderson or Warren                         10
            Were Foreseeable Changes
         b. DE Legislature Rejected "Use Test"                 10
         c. "Use Test" Revived Post-Trial                      11
            With 1992 Expansion
   SUMMARY                                                           12


Ground Two: The Robbery First Degree                                      14
   Convictions, For Displaying a Handgun,
   Violates Clear Legislative Intent And
   Due Process
   A. Supremacy Clause Violated                                    14
   B. Due Process Violated                                         15
      1. Robbery Indictment                                    15
      2. Liability Limits                                      16
      3. Only Robbery Second Proven                            16
         a. Sec. 274 Two Pronged Test                      17
            (i) First Prong "Accomplice"                    17
               Conceeded

I.

(ii) Second Prong "degree" Test          18
    (a) Robbery is Divided into          18
        Degrees
    (b) Only Robbery Second          18
        Degree Proven

SUMMARY          19

CONCLUSION          20

AFFIDAVIT OF DEFENDANT          27

APPENDIX

A-1    Indictment
A-7    DE Criminal Code with Commentary (1973), pp. 24-27,
        52-53, 256-261
A-14   68 Del. Laws c. 37B (1992)
A-15   Trial Transcript p. C-129
A-16   Docket Sheet
A-28   Walls V. State, No. 290, 2004, Holland, J. (Del. Supr. Oct. 15, 2004)
A-29   Walls V. State, No. 290, 2004, Steele, C.J. (Del. Supr. Oct. 25, 2004)
A-30   State V. Walls, No. 8601300101, Toliver, J. (Del. Super. June 24, 2004)
A-34   State V. Anderson, 1992 WL 353826 (Del. Supr. Oct. 7, 1992)
A-36   Warren V. State, 1993 WL 132986 (Del. Supr. April 8, 1993)
A-248  Walls V. Redman, No. 90-423-RRM, McKelvie, J. (Del. Dist. Ct. March 25, 1993)
A-267  In the Matter of the Petition of Joseph M. Walls, No. 98 M-03-008,
        Toliver, J. (Del. Super. April 2, 1998)
A-272  Walls V. State, No. 175, 1998, Veasey, C.J. (Del. Supr. March 17, 1999)
A-278  Walls V. Taylor, No. 90-423-RRM, McKelvie, J. (Del. Dist. Ct. June 21, 2001)
A-308  Walls V. Redman, No. 01-4335, Sloviter, J. (3rd Cir. Sep. 18, 2002)
A-316  Walls V. Delaware, No. 04-8552, Clerk (U.S. Supr. Ct. April 18, 2005)

*TABLE OF CITATIONS*

COURT DECISIONS                                                    Page

Bouie V. Columbia, 84 S.Ct. 1697 (1964)                           9, 12, 21

Buckley V. Florida, 123 S.Ct. 2020 (2003)                         24, 25, 26

Carmell V. Texas, 120 S.Ct. 1620 (2000)                           9

Collins V. Youngblood, 110 S.Ct. 2715 (1990)                      9

Davis V. State, 400 A.2d 292 (Del. 1979)                          17, 18

DiSabatino V. State, 808 A.2d 1216 (Del. Super. 2002)             8

Dretke V. Haley, 124 S.Ct. 1847 (2004)                            20

Elmendorf V. Taylor, 23 U.S. 152 (1825)                           4

Engle V. Isaac, 102 S.Ct. 1558 (1982)                             25

Estelle V. McGuire, 112 S.Ct. 475 (1991)                          21

Everett V. Beard, 290 F.3d 500 (3rd Cir. 2002)                    22

Fidelity Deposit V. Dept. Admin. Serv., 830 A.2d 1224
        (Del. Ch. 2003)                                           12

Fiore V. White, 121 S.Ct. 712 (2001)                              9, 13, 19, 25

Hamilton V. State, 831 A.2d 881 (Del. 2003)                       25

Herrera V. Collins, 506 U.S. 390 (1993)                           20
Herring V. State, 805 A.2d 872 (Del. 2002)                        18
In re Winship, 397 U.S. 358                                       19, 25

In the Matter of the Petition of Joseph M. Walls,                 A-267, 2
        C.A. NO. 98M-03-008, Toliver, J.
        (Del. Super. April 2, 1998) (order)

Jackson V. Virginia, 99 S.Ct. 2781 (1979)                         19, 20, 25

Johnson V. State, 711 A.2d 18 (Del. 1998)                         7, 12, 17, 18

Jones V. U.S., 526 U.S. 227 (1999)                                21

Lanzetta V. New Jersey, 59 S.Ct. 618 (1939)                       24

LeCompte V. State, 516 A.2d 898 (Del. 1986) — 25

Lockyer V. Andrade, 123 S.Ct. 1166 (2003) — 22

Marks V. U.S., 97 S.Ct. 990 (1977) — 24

Mapler V. Stegall, 340 F.3d 433 (6th Cir. 2003) — 22

Marbury V. Madison, 1 Cranch 137 (1803) — 4

Mullaney V. Wilbur, 421 U.S. 684 (1975) — 21

Pleasanton V. State, 817 A.2d 791 (Del. 2003) — 9

Sawyer V. Whitley, 112 S.Ct. 2514 (1992) — 19, 23

Schlup V. Delo, 513 U.S. 298 (1995) — 20

State V. Anderson, 1992 WL 353826 (Del.Supr. 1992) — A-34, 10, 12, 24

State V. Dickerson, 298 A.2d 761 (Del. 1972) — 12, 13

State V. Klosowski, 310 A.2d 656 (Del. Super. 1973) — 18

State V. LeCompte, 538 A.2d 1102 (Del. 1988) — 13, 24

State V. Spence, 367 A.2d 983 (Del. 1976) — 12

State V. Walls, IN86-03-1204, etseq., Toliver, J. (Del. Super. June 24, 2004) (order) — A-30, 9, 10, 12, 17, 21, 22

Stugner V. California, 123 S.Ct. 2446 (2003) — 8, 9

Taylor V. State, 679 A.2d 449 (Del. 1996) — 7, 12

Thompson V. Louisville, 80 S.Ct. 624 (1960) — 20

U.S. V. Lanier, 117 S.Ct. 1219 (1997) — 24

Wainwright V. Sykes, 92 S.Ct. 2497 (1977) — 20

Wallace V. Nash, 311 F.3d 140 (2nd Cir. 2002) — 11

Walls V. Delaware, NO. 04-8552 (U.S.Sup.Ct., April 18, 2005) (order) — A-316, 2

Walls V. Redman, C.A. No. 90-423-RRM, McKelvie, J. (D.C. Del. March 25, 1993) (order) — A-248, 2

Walls V. Redman, C.A. No. 01-4335, Sloviter, J.
    (3rd Cir. Sep. 18, 2002)(order)                          A-308, 2

Walls V. State, No. 175, 1998, Veasey, C.J.
    (Del. Supr. March 17, 1999)(order)                       A-272, 2

Walls V. State, No. 290, 2004, Holland, J.
    (Del. Supr. Oct. 15, 2004)(order)                        A-28, 2, 21
                                                             22

Walls V. State, No. 290, 2004, Steele, C.J.
    (Del. Supr. Oct. 25, 2004)(order)                        A-29, 2, 21
                                                             22

Walls V. Taylor, C.A. No. 90-423-RRM, McKelvie, J.           A-278, 2
    (D.C. Del. June 21, 2001)(order)

Walton V. State, 821 A.2d 871 (Del. 2003)                    8

Warren V. State, 1993 WL 132986 (Del. Supr. 1993)            A-36, 10, 12

Williams V. State, 818 A.2d 906 (Del. 2002)                  18, 25

Williams V. Taylor, 120 S.Ct. 1495 (2000)                    22

Wilson V. Vaughn, 304 F. Supp. 2d 652 (E.D. Pa. 2004)        20

Wisniewski V. State, 138 A.2d 333 (Del. 1957)                11, 12

Ylst V. Nunnemaker, 501 U.S. 797 (1991)                      22


STATUTES

U.S. Const. Art. 1, sec. 10                                  4

U.S. Const. Art. III, sec. 2                                 4

U.S. Const. Art. VI, cl. 2                                   4

U.S. Const. Amend. 5, 6, 14                                  5, 8, 9, 12, 15, 26

28 U.S.C. 2251                                               21

28 U.S.C. 2254                                               5, 15, 21

Declaration of Rights and Fundamental Rules                  9
    of the Delaware State, sec. 11 (1776)

Del. Const. Art. 1, sec. 7-9                                 9

11  Del. C.  222                                          22, 23, 26

11  Del. C.  271                                          16, 17

11  Del. C.  274                                          16 - 19, 22, 23
                                                          26
11  Del. C.  301                                           19, 22

11  Del. C.  612                                          5, 23

11  Del. C.  831                                          16, 23

11  Del. C.  832                                          15, 19, 23

11  Del. C.  1447                                         5, 7, 23

68  Del. Laws c. 378  (1992)                              A-14, 7, 23
                                                          24, 26
Delaware Criminal Code with Commentary (1973)            A-7 to A-13, 6
                                                          10, 11, 16, 19,
                                                          24, 26
Blacks Law Dictionary                                     8

<u>STATEMENT OF THE CASE</u>

It is alleged that in 1985 the Defendant (Mr. Joseph M. Walls) and his co-defendant (Mr. Efrain Hernandez) were involved in citizen vigilance committee activities, taking direct action against notorious drug dealers in New Castle County, State of Delaware. These vigilance actions consisted of breaking into the buildings of known drug dealers, assaulting the <u>male</u> occupants thereof, and depriving them of their drug profits and poisons.

Relevant to the current case are the alleged citizen vigilance committee actions against a drug syndicate controlled by Jeffrey Pancoast and Dmytro Shevcheko — two notoriously active drug dealers who operated a dangerously violent methamphetamine and marijuana franchise out of their family home in Newport Delaware [ both of whom, it was latter determined, were known to and protected by the Newport or New Castle County police departments as "confidential reliable informants"].

On the evening of December 14, 1985, the Pancoast / Shevchenko drug gang was having one of their routine drug parties at their Newport lair. Defendant and Mr. Hernandez waited and watched, from a vehicle parked down the street, as members of the Pancoast / Shevchenko drug gang noisily stumbled out into the public street and departed.

When it appeared that the last of the drug gang's soldiers had left, Defendant and Mr. Hernandez prepared to take action. With great stealth, Defendant and Mr. Hernandez cautiously approached the building, peered through the front window of the Pancoast / Shevchenko drug den and observed that the drug leaders were settled down on a couch in an apparent drug induced stupor, and noticed drugs and drug paraphernalia strewn about the room.

1.

Defendant and Mr. Hernandez burst into the drug den. Defendant possessed a small lightweight red aluminum No. 4 little league baseball bat (A-4-5; A-15). Mr. Hernandez possessed a small handgun (A 1-2; A-15).

Defendant struck Pancoast (A-4) and Shevchenko (A-3-4) while screaming at them about their drug pushing and letting them know that it was no longer safe for the Pancoast/Shevchenko drug syndicate to push their poisonous narcotics upon the otherwise safe family friendly Newport community (A-5). At the same time, Defendant further- "humiliated" these "big time drug bosses" by forcing both Boss Pancoast (A-2) and Under Boss Shevchenko (A-2) to empty their pockets (as they had done to so many of their "victims"). In this way the Pancoast/Shevchenko drug syndicate was deprived of their drug revenue and their poisonous narcotics, and the apparant safety of their drug lair.

These are the facts and motivations for attacking the Pancoast/Shevchenko drug syndicate's principles on the evening of December 14, 1985.

As a result of these citizen vigilance committee actions, Defendant was arrested, tried, and ultimately sentenced to a combined 62 years in prison. Defendant's direct appeal (A-23, #54), first postconviction motion (A-23, #58; A-24, #62), appeal thereof (A-25, #73), state writ of habeas corpus (A-267; A-272), and federal writ of habeas corpus were denied (A-248, A-278, A-308).

The federal questions sought to be reviewed were first raised and denied in the second postconviction motion (A-25, #80; A-30), raised and denied on appeal and on reargument/rehearing (A-28; A-29), and on Certiorari (A-316). This is Defendant's petition for writ of habeas corpus from the state court's denial of these federal questions.

2.

GROUND ONE
REASON FOR GRANTING THE PETITION

THE DEADLY WEAPON AND
ASSAULT CONVICTIONS FOR
POSSESSING OR USE OF A
COMMON BASEBALL BAT
VIOLATES LEGISLATIVE
INTENT, EX POST FACTO, AND
DUE PROCESS

The standard and scope of review
applicable to this argument is :

a) whether State courts are expected to
comply with the federal court's
interpretations of the federal ex post
facto and due process clauses;

b) whether use of a post-trial change in
the law, which expanded the definition
of a deadly weapon, to criminalize
"use" of a baseball bat, violates ex
post facto or due process; and

c) whether clearly expressed legislative
intent, that a "baseball bat" was not
a deadly weapon during the time this
crime was committed, exposes a clear
ex post facto or due process violation.

Defendant's weapon based convictions for "use" of a
baseball "bat", when the Delaware General Assembly specified that
a "baseball bat" was not a deadly weapon at the time of

3.

Defendant's crime, violates clear legislative intent, proves actual innocence, and violates both ex post facto and due process.

## A. SUPREMACY CLAUSE VIOLATED

These proceedings involve a question of exceptional importance in that a clear constitutional violation was proven, yet the state courts refused to either consider or comply with this Court's ex post facto or due process decisions.

The United States Constitution clearly specifies that this Court's "judicial Power shall extend to all cases ... under the Constitution", U.S. Const. Art. III, sec. 2, and that:

> This Constitution, ... shall be the Supreme
> Law of the Land; and the Judges in every
> State shall be bound thereby

U.S. Const. Art. VI, cl. 2. In compliance therewith, courts have recognized the "Supremacy" of this Court's interpretation of the constitution since the funding of the United States.[1] Marbury v. Madison, 1 Cranch 137 (1803) (courts bound by Constitution); Elmendorf v. Taylor, 23 U.S. 152 (1825).

---

[1] see also Hamilton's Federalist #80 ("third point. Controversies between the nation and its members or citizens can only be properly refferred to the national tribunals"), and Federalist #81 ("that there ought to be one court of supreme and final jurisdiction is a proposition which has not been, and is not likely to be contested", "the constitution ought to be the standard of construction for the laws, and that wherever there is an evident opposition, the laws ought to give place to the constitution").

Citizens of these United States have always looked to this Court to require State courts to comply with this Court's interpretation of federal constitutional laws, and to enforce uniformity with this Court's precedent. ② In this case, there is a clear conflict between the States' approval of a retroactive expansion of substantive criminal law to sustain Defendant's "deadly weapon" convictions and this Court's ex post facto and due process precedent. Thus, in the interest of federlism, this Court is asked to resolve this conflict. 28 U.S.C. 2254(a)(d).

## B. EX POST FACTO VIOLATED

The Ex Post Facto clause prevents state legislatures from retroactively altering the definition of crimes to expand the range of conduct prohibited. U.S. Const. Art. 1, sec. 10; Amend. 5, 6, 14.

### i. DEADLY WEAPON INDICTMENTS

Defendant was indicted on March 19, 1986 upon several charges for possession or use of a baseball bat, including one count of Possession of a Deadly Weapon During Commission of a Felony (PDW) and two counts of Assault 2nd degree (Assault). 11 Del.C. 612, 1447 (A-3 - A-5).

---

② see Federalist #80 ("Second point... the mere necessity of uniformity in the interpretation of the national laws, decides the question."), and Federalist #81 ("the most discerning cannot foresee how far the prevalency of a local spirit may be found to disqualify the local tribunals").

5.

The Indictment specified that the deadly weapon in the charges was a common baseball "bat":

> did knowingly possess a deadly weapon during the commission of a felony by possessing a bat, a deadly weapon, during the commission of Assault Second degree....

Indictment, IN86-03-1211, Count VIII (A-4,5); and

> did intentionally cause physical injury ... by striking him with a bat, a deadly weapon.

Indictment, IN86-03-1208, -1210, Counts VI, VII (A-3,4).

Defendant was tried on October 6, 1986, was convicted and was sentenced to 15 years (for the PDW) and 8 years (4yrs for each Assault) for a total of 23 years in prison (A-18, #12; A-21, #37).

## 2. POST-TRIAL EXPANSION OF DEADLY WEAPON DEFINITION

At the time Defendant's crime was committed (in 1985), Delaware law defined a "deadly weapon" to mean:

> any weapon from which a shot may be discharged, a knife... billy, blackjack, bludgeon....

Delaware Criminal Code with Commentary, 1973, p.24 (A-7) (hereafter "DE Code Commentary").

It was not until July 14, 1992 (six years after the crimes were committed in December 1985) that the Delaware General Assembly expanded the definition of what constituted

6.

a "deadly weapon" by including therein:

> any dangerous instrument ... _used_ to cause
> death or serious physical injury....

68 _Del. Laws_, c. 378, sec. 2 (A-14)(emphasis added). _Johnson v._
_State_, 711 A.2d 18, 26-28 (Del. 1998)(explaining history of
weapon statute and _expansion_ of deadly weapon definition).

### 3. BASEBALL BAT EXCLUDED

The _Synopsis_ to 68 _Del. laws_ c. 378 clearly explained that
the July 14, 1992 change in the law was _intended_ to _expand_
the definition of what is a deadly weapon by including within the
definition instruments of crime that are otherwise considered
common objects. _Taylor v. State_, 679 A.2d 449, 454 (Del. 1996)
("intended to add to the specific list of deadly weapons", by adding
otherwise "common objects" that maybe used to commit crimes).

The _Synopsis_ explained that:

> In the recent _past_, a number of brutal
> ... _assaults_ have been committed with _common_
> _objects_ such as ... _baseball bats_, ... Because
> of a _loophole_ in our _current_ law, the defendant
> _could not_ be _convicted_ with Possession of
> a Deadly Weapon During the Commission of a
> Felony [11 _Del. C._ 1447]

(A-14)(emphasis added).

When the Delaware General Assembly amended the deadly
weapon statute, by _materially_ expanding the definition of a

7.

deadly weapon to specifically include a "baseball bat",
rules of statutory construction create a presumption that
an enlargement in the meaning of the statute was
intended. In making this material change, the Delaware
General Assembly's action can neither be assumed to be
without significance nor to have committed an oversight or
to have acted inadvertently. DiSabatino v. State, 808 A.2d
1216, 1227 (Del. Super. 2002)(looking to Synopsis for legislative
intent); Walton v. State, 821 A.2d 871, 876 (Del. 2003)
(courts not legislative body).

By specifying that a "baseball bat" was not previously
included within the definition of a deadly weapon prior to
July 14, 1992, the Delaware General Assembly made clear its
intent that at the time of Defendant's crime (in 1985) a
baseball "bat" was not a deadly weapon. [3]

In other words, the Delaware General Assembly made clear
its intent that the 1992 amendment was a substantive expansion
of the law, that altered the range of conduct the statute
punished. Thus, to rely upon the 1992 expansion of the deadly
weapon definition to now include a "baseball bat" violates
Ex Post Facto. U.S. Const. Art. 1, sec. 10; Amend. 5, 14; Stogner v.
California, 123 S.Ct. 2446, 2449 (2003)(explaining the "fair warning"

[3] The Delaware General Assembly referred to this as a
"loophole" (A-14): a means of evading or escaping liability.
see Black's Law Dictionary.

8.

prohibition of Ex Post Facto); _Pleasanton v. State_, 817 A.2d 791, 792 (Del. 2003)(Ex Post Facto to apply statute retroactively); _Collins v. Youngblood_, 110 S.Ct. 2715, 2718-20 (1990)(explaining original understanding of Ex Post Facto [4] ); _Stogner v. California_, 123 S.Ct. 2446, 2449 (2003)(same); _Carmell v. Texas_, 120 S.Ct. 1620 (2000)(same).

## C. DUE PROCESS VIOLATED

While the Ex Post Facto clause precludes state legislatures from retroactively altering the definition of crimes, state courts are also "barred by the Due Process clause from achieving precisely the same result by judicial construction." _Bouie v. Columbia_, 84 S.Ct. 1697, 1702-03 (1964); _Fiore v. White_, 121 S.Ct. 712, 713-14 (2001) (retroactively applied court decision violates due process); _U.S. Const._ Amend. 5, 6, 14.

### 1. "USE TEST" VIOLATION

To deny the postconviction motion, the Delaware Courts relied upon the "use test":

> The Supreme Court of Delaware has held that it is the _use_ of the bat which _qualifies_ it as a deadly weapon and "when a baseball bat is _used_ as a bludgeon . . ., a baseball bat _becomes_ a deadly weapon."

---

[4] see _Collins_, 110 S.Ct at 2720; citing Declaration of Rights and Fundamental Rules of the Delaware State, sec. 11 (1776) [now _Del. Const._ Art. 1, sec. 7].

*Order*, pp. 2-3, n. 10, citing *Anderson* [5] and *Warren* [6] (A-31-A-32).

### a. Neither *Anderson* or *Warren* were Foreseeable Changes

Defendant's crimes were committed in 1985 (A-4-5). The crimes in *Anderson* were committed in 1991 (or *six* years *after* Defendant's crimes). The crimes in *Warren* were also committed in 1991 (again *six* years *after* Defendant's crimes).

Defendant was tried in 1986 (A-18). The *Anderson* case was decided in 1992 (or *six* years *after* Defendant's trial). And, the *Warren* case was decided in 1993 (or *seven* years *after* Defendant's trial).

Given these facts this Court should recognize that neither *Anderson* or *Warren* were "foreseeable" at the time Defendant's crimes were committed.

### b. DE Legislature Rejected "Use Test"

The *DE Code Commentary* specifies that:

> The definition of "deadly weapon" is more *narrow* than that given in present [7] Delaware law. The present [8] Delaware meaning of that term is more like the meaning given to "dangerous instrument." ... Possession of a *truely* deadly weapon may be treated in such a scheme as a more serious offense than possession of a dangerous instrument.

---

[5] *State V. Anderson*, 1992 WL 353826 (Del. Supr. 1992) (A-34).
[6] *Warren V. State*, 1993 WL 132986 (Del. Supr. 1993) (A-36).
[7] In this case "present" refers to the law *before* the 1973 revision of the Delaware criminal code.
[8] Id.

*DE Code Commentary* (1973), p.26, citing *Wisniewski V. State*, 138 A. 2d 333 (Del. 1957)(A-8). See also *Wallace V. Nash*, 311 F. 3d 140, 144 (2nd Cir. 2002)(explaining that "truely deadly weapon" are "limited to items that have inherent potential use as implements of aggression").

*Wisniewski* is the source of the "use test":

> In case of doubt the question as to whether or not an instrument constitutes a deadly weapon *depends* to a large extent upon the *manner* in which it *was used*.

138 A. 2d at 341-42 (emphasis added).

In other words, *prior* to the 1973 revision of the entire Delaware Criminal Code (to bring Delaware criminal laws into compliance with the Model Penal Code), the broader *Wisniewski* "manner in which" a common object "was used" test, to determine when a common object (like a baseball bat) became a deadly weapon, was the controlling standard.

However, by specifically *rejecting* the *Wisniewski* test, the *DE Code Commentary* (1973) makes the Delaware legislature's intent clear: that *after* the 1973 revision, the inclusive *Wisniewski* common object "manner of use" test was *no longer* valid. *DE Code Commentary* (1973), p. 26 ("is more narrow than" *Wisniewski*)(A-8).

c. "Use Test" Revived Post-Trial With 1992 Expansion

It was not until the 1992 expansion of the deadly weapon definition that the Delaware legislature *added* back *into* the

"deadly weapon" definition the "common object" and "manner of use" test of *Wisniewski*. *Johnson*, 711 A.2d at 27 ("the definition of deadly weapon is again expansive"); *Taylor*, 679 A.2d at 454 (same).

### SUMMARY

Courts have repeatedly cautioned that no court is free to usurp the role of the legislature, as was done by the judicial activist in this case. By re-injecting the "use test" back into the deadly weapon definition, without and contrary to legislative action or intent, the State courts violated fundamental principles of statutory construction. *State V. Dickerson*, 298 A.2d 761, 767–69 (Del. 1972) (courts can not expand legislative intent); *State V. Spence*, 367 A.2d 983, 990 (Del. 1976) (same); *Fidelity Deposit V. Dept. Admin. Serv.*, 830 A.2d 1224, 1228–29 (Del. Ch. 2003) (court may not engraft upon a statute language clearly <u>excluded</u> therefrom). But, that is exactly what the state court did in this case. *Order*, p.2 (A-31) ("<u>manner</u> in which you <u>used</u>", "<u>use</u> of the bat", "<u>used</u> as a bludgeon") (emphasis added).

By applying the <u>unreported</u> *Anderson* and *Warren* decisions to Defendant's crimes the Delaware courts applied an <u>unforeseeable</u> interpretation of the law, to a crime that <u>occurred</u> over <u>six</u> years <u>before</u> those opinions were made, in a manner that <u>disadvantaged</u> Defendant in violation of Defendants' Due Process rights. *U.S. Const.* Amend. 5, 14; *Bowie*, 84 S.Ct. at

12.

1702-03 (non-retroactivity principle.); _State v. LeCompte_, 538 A.2d 1102 (Del. 1988)(same); _Fiore_, 121 S.Ct. at 714 (due process violation); _Dickerson_, 298 A.2d at 767-69 (same).

GROUND TWO

REASON FOR GRANTING THE PETITION

THE ROBBERY FIRST DEGREE
CONVICTIONS, FOR DISPLAYING
A HANDGUN, VIOLATES CLEAR
LEGISLATIVE INTENT AND
DUE PROCESS

The standard and scope of review
applicable to this argument is:

a) whether state courts are expected
to comply with federal court
interpretations of federal due process
rights; and

b) whether clearly expressed legislative
intent, that criminal liability must be
limited to the aggravating facts and
degree of crime Defendant is
personally accountable for, prove actual
innocence and violation of due process.

Defendant's convictions for the co-defendants' display of a
handgun, resulting in enhanced sentencing for aggravated
robbery, violates Delaware's limited liability statute, violates
clear legislative intent, proves actual innocence on the
aggravating element, and violates due process.

A. SUPREMACY CLAUSE VIOLATED

Defendant incorporates by reference herein, Ground One, part
A, pp. 4-5 and notes 1-2, supra.

14.

In this case, there is a clear conflict between the State's approval of a verdict and sentence based upon insufficient evidence (i.e., no personal "accountability" or display of the "handgun") and the federal courts' due process insufficient evidence precedent. Thus, in the interest of federalism, this Court is asked to resolve this conflict. 28 U.S.C. 2254(a)(d).

## B. DUE PROCESS VIOLATED

The due process clause prevents the conviction and sentence of an innocent man when the state fails to prove all the elements of the crimes charged. U.S. Const. Amend. 5, 6, 14.

### 1. ROBBERY INDICTMENT

Defendant was indicted on March 19, 1986 upon several charges which included two counts of Robbery First degree in violation of 11 Del.C. 832. The Indictment specified that the two Robbery charges depended upon the accomplice's actions:

> when in the course of the commission of the crime, Efrain Hernandez displayed what appeared to be a deadly weapon, to wit: a handgun.

Indictment, IN86-03-1205, -1206, Counts 2, 3 (A-1-2).

Defendant was tried on October 6, 1986, was convicted, and was sentenced to 10 years on each Robbery (for a total of 20 years in prison) (A-12, A-21).

15.

## 2. LIABILITY LIMITS

Under Delaware statutory law, a person is guilty of an offense committed by another person. 11 Del.C. 271. However, there are _limits_ placed upon the extent of this liability. Specifically, 11 Del.C. 274, which states:

> When, pursuant to sec. 271 of this title, 2 or more persons are criminally liable for an offense which is divided into degrees, _each_ person is guilty of an offense of such _degree_ as is compatible ... with his _own accountability_ for an _aggravating fact_ or circumstances.

11 Del.C. 274 (A-10)(emphasis added).

The _DE Code Commentary_ makes the legislative intent clear:

> This section ... [requires] imposition of a _deserved_ penalty _no matter_ what penalty the _other_ parties received. It allows one party to be convicted of _first_-degree [robbery], for example, when the other's [accountability for ~~the~~ _aggravating fact_] makes him guilty _only_ of _second_-degree [robbery] ... The _proper_ test is the actor's _personal_ [accountability].

_DE Code Commentary_ (1973), pp. 52-53 (A-10).

## 3. ONLY ROBBERY SECOND PROVEN

The Indictment charged Defendant with committing Robbery. Robbery is "divided into degrees" by statute. The difference between Robbery _Second_ degree and Robbery _First_ degree is that Robbery _First_ degree requires the additional "_aggravating_" element of a weapon. Compare 11 Del.C. 831 with 11 Del.C. 832 (2). (A-11, 13).

Cf. *Davis V. State*, 400 A.2d 292, 296 (Del. 1979) ("robbery is *presumed* to be in the *second* degree").

The *Indictment* *specified* that the weapon involved in this crime was a "handgun" and *specified* that *only* the *accomplice* displayed that "handgun". *Indictment*, Counts 2, 3 (A-1, 2; specifying the accomplice's name as "Efrain Hernandez"). The State's *trial* *theory* was that Defendant's liability was *based upon* the display of a "handgun" by the *accomplice*. The trial *evidence* clearly supports the fact that *only* the *accomplice* displayed the "handgun" (A-15). Thus, the Indictment, the State's trial theory, and the trial evidence all support *only* one conclusion — that Defendant *was not* in possession of and *did not* display the "handgun" during the commission of the robberies.

### a. Sec. 274 Two Pronged Test

The State Court refused to consider the Due Process mandate to consider that "sections 271 and 274 require [a] two-part analysis when the state proceeds on a theory of accomplice liability." First, "whether the State has established that the defendant was an accomplice", and, second, "if that offense is divided into degrees, then ... what degree of the offense the defendant committed." *Johnson*, 711 A.2d at 30. *Order*, pp. 3-4 (A-32, 33).

### (i) First Prong "Accomplice" Conceeded

The State Court failed to consider that the state conceeded before the Courts that Defendant's Robbery convictions were

predicated upon accomplice liability.[9]  Thus, sec. 274's <u>first</u> prong is not an issue..

(ii) Second Prong "degree" test

The State Courts also failed to consider that sec. 274's <u>second</u> prong is further divided: (a) is the "offense divided into degrees", and (b) what degree of the offense the defendant committed. <u>Johnson</u>, 711 A.2d at 30.

(a) Robbery is Divided into Degrees

The State Courts failed to consider that Delaware has long recognized that "Robbery is an offense that is divided into degrees." <u>Davis</u>, 400 A.2d at 296; <u>Herring v. State</u>, 805 A.2d 872, 874 (Del. 2002).

(b) Only Robbery Second Degree Proven

The State Courts failed to consider the mandate that determining what degree of crime Defendant committed required an "<u>individualized</u> determination of the defendants' mental state <u>and</u>[10] culpability for any <u>aggravating</u> fact or circumstances." <u>Johnson</u>, 711 A.2d at 30.

The State Courts failed to consider that it was this <u>second</u> stage of the sec. 274 second prong analysis that the State failed to prove at trial. Specifically, the State <u>did not</u> and <u>could not</u> prove that Defendant was "accountable" for the

---

(9) Failure to brief (or respond) conceeds issue.
(10) see <u>State v. Klosowski</u>, 310 A.2d 656, 657 (Del. Super. 1973) ("In its commonly accepted meaning 'and' is a connective, and is not generally used to express an alternative"); <u>Williams v. State</u>, 818 A.2d 906, 912 (Del. 2002) (same).

"handgun" that "aggravated" the crime of Robbery <u>Second</u> degree to Robbery First degree as alleged in the Indictment and at Trial.

### SUMMARY

The State Courts refused to consider that the Due Process Clause forbids a state from convicting a person for a crime without proving all the elements of the crime; that this is a <u>core</u> <u>fundamental</u> constitutional right. <u>In re Winship</u>, 397 U.S. 358, 364. Due process was violated in this case when Defendant was convicted for being "armed with a deadly weapon" under 11 <u>Del. C.</u> 832(2) [ (A-1, A-2: the "handgun") ] without the State proving that Defendant was "armed" with the "handgun". <u>Fiore v. White</u>, 121 S. Ct. 712, 714 (2001) (due process).

In this case, the State did not <u>limit</u> Defendant's liability. Since the evidence proves that Defendant <u>was</u> <u>not</u> "accountable" for the "aggravating fact" (the "handgun") which <u>elevated</u> Robbery <u>Second</u> degree to Robbery <u>First</u> degree, pursuant to 11 <u>Del. C.</u> 274 and Due Process, Defendant can be held liable for <u>only</u> Robbery <u>Second</u> degree; which more accurately reflects the extent of Defendant's "<u>own</u> accountability for [the] aggravating fact." DE Code Commentary (1973), pp. 52-53 (A-10); <u>Jackson v. Virginia</u>, 99 S. Ct. 2781 (1979) (Due Process); <u>In re Winship</u>, 397 U.S. 358 (1970) (elements test); 11 <u>Del. C.</u> 301(6). Compare <u>Sawyer v. Whitley</u>, 112 S. Ct. 2514, 2520-22 (1992) (discussing "proof or disproof of aggravating circumstances" to limit liability).

19.

<u>CONCLUSION</u>

Actual innocence is a default provision that permits a petitioner to seek relief if he was otherwise procedurally barred under habeas law. Such a waiver is available in this case because of the constitutional violation that resulted from the convictions which were had upon crimes that were not proven at trial. <u>Dretke V. Haley</u>, 124 S.Ct. 1847, 1854 (2004) (factual innocence and imposition of an unauthorized sentence is miscarriage of justice), citing <u>Thompson V. Louisville</u>, 80 S.Ct. 624, 629 (1960), <u>Jackson</u>, 99 S.Ct. 2781, and <u>Wainwright V. Sykes</u>, 92 S.Ct. 2497 (1977); <u>Schlup V. Delo</u>, 513 U.S. 298, 316, 327-28 (1995) (actual innocence "freestanding" claim, "gateway" claim, or "innocence of" aggravating factor claim excuses default), at 323 ("no reasonable juror would have found" guilt test); <u>Herrera V. Collins</u>, 506 U.S. 390 (1993) (White, J., concurring) at 429 ("no rational trier of fact could [find] proof of guilt beyond a reasonable doubt" proves actual innocence), citing <u>Jackson</u>, 443 U.S. at 316, 324 ("no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof [on]...the existence of the elements of the offense"); <u>Wilson V. Vaughn</u>, 304 F.Supp.2d 652, 656 (E.D. Pa. 2004) (Third Circuit recognizes that petitioners may rely upon either existing record <u>or</u> new evidence, in actual innocence claims).

Defendant recognizes that it is not the province of federal habeas courts to re-examine a state court determination on

20.

purely state law questions; that in conducting habeas review, federal courts are limited to deciding whether a conviction has violated the constitution of the United States, 28 U.S.C. 2241, 2254; Estelle V. McGuire, 112 S.Ct. 475 (1991). However, in doing so, this Court must scrutinize the definitions and constructions of the applicable criminal acts to determine if federal constitutional violations have resulted: for the courts have cautioned, since Mullaney, that a state must not be allowed to "manipulate its way out of Winship." Jones V. U.S., 526 U.S. 227, 240 (1999); Mullaney V. Wilbur, 421 U.S. 684, 691 n.11 (1975) (cautioning that a state court interpretation of state law can be re-examined when it "appears to be an obvious subterfuge to evade consideration of a federal issue"); Bouie, 378 U.S. at 354 (heart of Bouie analysis is "scrutiny" of the "definition and construction" of state criminal act).

Defendant raised both Ground One and Ground Two before the state courts in his postconviction motion and in the appeal thereof. In doing so, Defendant specifically claimed violations of the U.S. Constitution Due Process and Ex Post Facto clauses and federal court interpretations of these U.S. Constitution clauses (A-30). However, when denying Defendant's claims, the state courts refused to assess the merits of these U.S. Constitution claims for relief (A-31-33; A-28; A-29). Under habeas law, this court must defer to the state courts' determination of the

21.

federal issues unless those determinations are contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. 2254 (d)(1). Lockyer v. Andrade, 123 S.Ct. 1166 (2003). In reviewing a state court's summary denial of the state appeals, this court must "look through" the summary dispositions (A-28, A-29) to the last reasoned decision (A-30). Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991). Where, as here, the state courts did not assess the merits of the federal claims, the deference due under habeas law does not apply. Everett v. Beard, 290 F.3d 500, 508 (3rd Cir. 2002), citing Williams v. Taylor, 120 S.Ct. 1495 (2000)(O'Connor, J., concurring); Mapler v. Stegall, 340 F.3d 433, 436 (6th Cir. 2003). Therefore, this Court may, first, look to see how the state has defined the applicable criminal statutes; second, determine what limits are placed upon their applicability; and, third, determine whether the convictions conform with constitutional mandates.

The Grounds for relief raised herein prove that the state courts refused to even consider that when the state fails its burden of proof on any element, the Defendant must be acquitted. In this case, the state failed its "burden of production" as required by 11 Del. C. 301 (a) and Due Process; and the "beyond a reasonable doubt" required by 11 Del. C. 301(b) and Due Process, as expanded by 11 Del. C. 222 (5), 274 (1985). Specifically, sec 222 (5) required the state to prove that

the "common object" (the "baseball bat") that Defendant possessed (11 Del.C. 1447) or used (11 Del.C. 612) was within the definition of a deadly weapon (A-3-5); and, sec. 274 required the state to prove Defendant's "individualized" "accountability" for the "handgun" (the "aggravating fact or circumstances") that enhanced Robbery Second degree [11 Del.C. 831(2)] to Robbery First degree [11 Del.C. 832(2)] (A-1, A-2). Because these Winship violations undermined the legality, integrity and fairness of the proceedings leading to the conviction, and because it strikes at the core of a fair trial, the consequences of such a constitutional violation can and should be examined carefully by this Court. Sawyer, 112 S.Ct. at 2520-22 (under Due Process states "adopted various narrowing factors", thus courts must consider whether "aggravating circumstances" exist to justify convictions; "proof or disproof of aggravating circumstances" as required by Due Process is "confined by the statutory definitions").

In addition, the years of litigation defining what is a "deadly weapon" [11 Del.C. 222(5) of 1985], proves that the definition was so unclear (or too broad) at the time of Defendant's crime, that a "baseball bat" may be interpreted as either in or out of the "deadly weapon" category.[11] When faced with such ambiguity on a facet as critical as an element

---

[11] The Synopsis to 68 Del. Laws c. 378 recognized this ambiguity (A-14).

23.

of a crime, the courts may rule that such a statute is void for vagueness or the courts may add a clarifying gloss [12] to the statute and apply it _prospectively_ _only_. But it would still violate Due Process for a court to apply that added and unforeseen precision retroactively, as the state courts did in this case. _Lanzetta v. New Jersey_, 59 S.Ct. 618, 620-21 (1939); _Marks v. U.S._, 97 S.Ct. 990, 994 (1977); _U.S. v. Lanier_, 117 S.Ct. 1219, 1225 (1997) (men of "common intelligence" "guess at meaning"); _LeCompte_, 538 A.2d at 1103 ("not forseeable", "unique circumstances").

Due Process is violated whenever a conviction is based upon conduct that a statute, properly interpreted, does not prohibit. Under the Delaware General Assembly's specifically articulated intent [13], Defendant could not have been guilty of the crimes for which he was convicted. When the General Assembly explained the language of the statutes [14], the General Assembly revealed the "simple, inevitable conclusion" that Defendant's convictions violated Due Process or Ex Post Facto. _Buckley v. Florida_,

---

(12) see _Anderson_ and cases cited therein for twisted "loops" the state courts have had to "jump through" to clarify what _was_ or what _was_ _not_ a "deadly weapon" (A-35).

(13) see _Synopsis_ to 68 _Del.Laws.c.378_ (A-14) ("common objects," "baseball bats", "loophole", "could not be convicted"); and _DE Code Commentary_ (1973), p.26 ("definition of 'deadly weapon' is _more_ _narrow_", "Possession of a _truely_ _deadly_ weapon ... more serious than possession of a dangerous instrument") and pp. 52-53 (", imposition of a deserved penalty no matter what penalty the other parties received", "allows one party to be convicted of _first_-degree ... when the other's ... [actions] makes him guilty _only_ of second-degree").

(14) _Id_.

24.

123 S.Ct. 2020, 2022 (2003), citing Fiore, 121 S.Ct. at 714, Jackson, 99 S.Ct. 2781, and In re Winship, 90 S.Ct. 1068.

Courts have repeatedly recognized the need to correct decisions of the Courts when their analysis was "incomplete", "too restricted" or "mistaken". [15]   Since the analysis of Defendant's claims for relief in the state courts' decisions was "incomplete", "too restricted" or "mistaken", this Court may approach these claims for relief as if this were a clean slate, and grant the relief requested. See also Engle v. Isaac, 102 S.Ct. 1558, 1575-76 (1982) (to protect against fundamental miscarriages of justice procedural bars must yield to the imperative of correcting a fundamentally unjust incarceration); Buckley, 123 S.Ct. at 2022, footnote * (same).

Given the "subsequent legal developments" in the Court's 2003 decision of Buckley, it is clear that Defendant's "deadly weapon" based Weapon (A-4-5, Count 8) and Assaults (A-3-4, Counts 6,7) convictions; and two "handgun" based Robbery First degree (A-1-2, Counts 2,3) convictions, violates clear legislative intent, Delaware statutory law, and either the Ex Post Facto or Due Process clauses.

_____

[15] LeCompte v. State, 516 A.2d 898, 904 (Del. 1986) ("the analysis ... was incomplete"); Williams v. State, 818 A.2d 906, 913 (Del. 2002) (analysis too restricted); Hamilton v. State, 831 A.2d 881, 887 (Del. 2003) ("mistaken").

25.

68 Del.Laws c. 378; DE Code Commentary (1973), pp. 26, 52-53; 11 Del.C. 222(5), 274 (1985); U.S.Const. Art.1, sec. 10, Amend. 5,6,14; Buckley, 123 S.Ct. at 2021-23 ( subsequent deadly weapon change in definition [11 Del.C. 222(5)] exposes existing Ex Post Facto and Due Process violations; and, liability limits [11 Del.C. 274] means that at time of crime, defendant was convicted of a crime — armed [Robbery] — for which he was not guilty, exposing existing Due Process violations ].

For these reasons, Defendant requests that the writ of habeas corpus issue to vacate the Weapon and two Assault convictions and sentences; and reduce the two Robber First degree convictions to Robbery Second degree with remand to the state court for resentencing.

Date: August 5, 2005.

Respectfully submitted,

Joseph M. Walls

XC: Delaware Innocent Project