(5) This Court has noted the difficulty in defining a "deadly weapon" under Delaware law because the statute does not purport to provide an exclusive listing of those items which appropriately fall within the classification. *Pauls v. State,* Del.Supr., 476 A.2d 157 (1984). Thus, this Court has been required to determine whether a shattered glass bottle (*Pauls*), a stick (*Allen v. State,* Del.Supr., 337 A.2d 320 (1975)), a two-by-four piece of wood with one end wrapped to form a handle (*Brown v. State,* Del.Supr., No. 258, 1986, Christie, C.J. (Sept. 15, 1988) (ORDER)) or a metal table leg (*Coleman v. State,* Del.Supr., No. 414, 1991, Horsey, J. (Sept. 18, 1992) (ORDER)), are deadly weapons. In all these cases, the subject item was held to be a deadly weapon.

\*\*2 (6) Certain of these rulings have turned on the question of whether the intended use of the device or instrument created a sufficient similarity to a statutorily designated weapon to permit classification as a deadly weapon. *Pauls, supra; Allen, supra.* We find it unnecessary to apply a "use" test in the present appeal. In our view, a baseball bat is indistinguishable from a bludgeon as that term is commonly defined. [FN3] A baseball bat clearly meets the physical attributes of a bludgeon: thicker or heavier on one end with the weighted end designed for striking. The Superior Court's description of the baseball bat proffered by the State in this case parallels the standard definition: "an ordinary baseball bat ... the handle end being smaller than the end that is normally used to hit the baseball."

(7) In ruling that a baseball bat was not a deadly weapon the Superior Court relied, in part, on our decision in *Stansbury v. State,* Del.Supr., 591 A.2d 188 (1991) which determined that a bar bell and a bowling ball were not deadly weapons. *Stansbury* is inapposite since the items there considered were, in the unaltered state, dissimilar to any of the designated weapons in section 222(5). While physical alteration may be required to transform an otherwise innocuous item of everyday use into a deadly weapon, it does not follow that alteration is the *sine qua non*. Some items in common usage, *e.g.,* knives, because of their inherently lethal nature are deemed, and defined to be, deadly weapons, notwithstanding the legitimate uses to which they may be put. Like knives, baseball bats because of their physical characteristics pose unusual potential for the infliction of death.

(8) Although the status of a baseball bat as a deadly weapon was not directly challenged, this Court recently affirmed a conviction of Murder First Degree in which a baseball bat was "used to bludgeon" the victim. A companion charge of Possession of a Deadly Weapon

During the Commission of a Felony was not appealed. *See Jones v. State,* Del.Supr., No. 253, 1991, Holland, J. (May 7, 1992) (ORDER).

(9) Defendants argue that treating a baseball bat as a "bludgeon" as that term is used in section 222(5) renders every innocent possessor of a baseball bat a potential felon under 11 *Del.C.* § 1447. While, conceptually, such a result might obtain, the same is true with respect to other items, such as knives, which find direct definitional application under the statute. Apart from speculation, there is no indication that the State or police agencies have resorted to a hypertechnical application of the deadly weapon statute to prosecute otherwise innocent possession of such items. In the absence of evidence of prosecutorial abuse we assume that a common sense enforcement, consistent with the obvious legislative intent, is sufficient answer to defendants' concern.

The judgment of the Superior Court is REVERSED and the deadly weapon charge REMANDED to the Superior Court for reinstatement of Count II of the Indictment.    - - -

> FN1. The defendants were arraigned on October 9, 1991 and trial commenced on February 3, 1992. Superior Court Criminal Rule 12(b)(2) requires that defenses based on defects in the indictment must be raised prior to trial. Here the State protested the lateness of the filing of the motion and the brief opportunity it was afforded to respond. The trial court overruled these objections.

> FN2. That subsection which appears within the "General Definitions" provision of the Delaware Criminal Code provides:
> "Deadly weapon" includes any weapon from which shot may be discharged, a knife of any sort (other than an ordinary pocketknife carried in a closed position), switchblade knife, billy, blackjack, bludgeon, metal knuckles, slingshot, razor, bicycle chain or ice pick. For the purpose of this definition, an ordinary pocketknife shall be a folding knife having a blade not more than three inches in length.

> FN3. The word "bludgeon" is defined in Webster's Third New International Dictionary (1986) as follows:

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

625 A.2d 280 (Table)
Unpublished Disposition

Page 1

(Cite as: 625 A.2d 280, 1993 WL 132986 (Del.Supr.))

H

(The decision of the Court is referenced in the Atlantic Reporter in a Table of Decisions Without Published Opinions.')

Supreme Court of Delaware.

Keith WARREN, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 218, 1992.

Submitted: March 16, 1993.
Decided: April 8, 1993.

Court Below: Superior Court of the State of Delaware in and for Kent County, Cr.A. Nos. IK91-06-0816 and -0817

Superior Court, Kent County.

AFFIRMED.

Before HORSEY, WALSH and HOLLAND, JJ.

ORDER

HORSEY, Justice.

**1 This 8th day of April, 1993, upon consideration of the briefs of the parties, it appears to the Court that:

(1) Following a ten-day jury trial in Superior Court defendant-appellant Keith Warren ("Warren" or "defendant") was found guilty of Murder in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony. For these crimes Warren was sentenced to life imprisonment and an additional five- year consecutive sentence. This is Warren's direct appeal from these convictions.

(2) The death of Gilbert "Mike" Mello ("Mello") occurred in the course of a melee of young males

that occurred outside a Dover nightspot (hereafter "lounge") at about 2:00 a.m. on May 24, 1991. Earlier that evening, defendant and five of his friends had attended a dance at Dover High School. After leaving the dance about 11:30 p.m. they proceeded to drive around Dover for several hours for the admitted purpose of seeking violent confrontations, characterized as "jumping" people. By early the following morning the number in the group (hereafter "group") had grown to about 30 youths traveling in a convoy of cars; and about 2:00 a.m. the group proceeded to the lounge.

(3) On arriving in the parking lot, defendant and his friends saw a fight in progress involving two males. The two males happened to be white, while defendant, his friends and most of the group were apparently black. Defendant and several of his friends intervened, assertedly attempting to break up the fight. Their purported reason was that one of the men fighting appeared to be armed with a knife while the other was not. When racial taunts or slurs were hurled, by whom is unclear, a melee broke out, apparently divided along racial lines. Others from the lounge and an adjoining restaurant joined the fray, including Mello and a friend, Michael Goff. As the fighting intensified some of the white youths allegedly armed themselves with crowbars and jacks from their cars and defendant obtained an aluminum baseball bat. Several witnesses testified that Warren was armed with a bat and had struck Mello in the head from behind as he ran toward the lounge. As Mello fell to the ground, apparently fatally injured, one of Warren's companions shouted, "You killed him." Everyone but Mello fled. Medical testimony at trial attributed Mello's death to a single blow to the head.

(3) At trial 43 witnesses, other than defendant Warren, testified. Several witnesses, called by both the State and defendant, identified defendant and two of his companions as possessing an aluminum bat at various times during the fighting. At least three witnesses identified Warren as the person who had struck Mello with the bat.

(4) One of the State witnesses called in its case in chief was Andre McDuffie ("McDuffie"). McDuffie had identified Warren as the bat wielder in an out of court photo line-up. McDuffie testified

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

625 A.2d 280 (Table)                                                        Page 2
Unpublished Disposition

(Cite as: 625 A.2d 280, 1993 WL 132986 (Del.Supr.))

that he had been in the group outside the lounge and that he had seen Warren, whom McDuffie did not know by name, holding a baseball bat after the melee began. McDuffie also testified that he saw Warren swing the bat over his head. However, McDuffie stated that because his view was obstructed, he could not see whom, if anyone, Warren had hit. The State later called police officer Kevin Lee Harding ("Harding"), who testified that the police had interviewed McDuffie shortly after May 24. Harding quoted McDuffie as stating that he had seen an individual, whom he had later identified as Warren from the line-up, strike the victim. Harding also testified that he had obtained a tape recorded statement from McDuffie that confirmed Harding's testimony. Harding stated , however, that he had mistakenly erased the tape shortly thereafter and before it was transcribed. [FN1] No objection was raised by defendant to the admission of any of the foregoing testimony.

**2 (5) At the conclusion of the trial, defendant requested a *Deberry* instruction by the court with respect to the failure of the State to preserve and produce the missing taped statement. Defendant claimed that the State had breached its duty under *Deberry* to preserve "evidence that could be favorable to the defendant." The Court denied the requested instruction primarily on the ground that the "secondary evidence" of McDuffie's statement was sufficient to protect Warren's due process rights.

(6) On appeal, Warren raises three claims of error. First, relying upon *Deberry v. State,* Del.Supr., 457 A.2d 744 (1983), Warren asserts that the Superior Court abused its discretion in refusing to give a *Deberry* lost evidence instruction to the jury. Second, Warren claims that the trial court abused its discretion and misapplied Delaware Rule of Evidence 404(b) by admitting testimonial evidence of prior violent acts committed by Warren on the night of the murder, in particular assaults on other individuals. Finally, Warren argues that the Superior Court committed legal error in declining to dismiss the indictment by finding a baseball bat not to be a deadly weapon as a matter of law. For the reasons which follow, we affirm the Superior Court's ruling on each of the three claims.

(7) In addressing a *Deberry* claim, this Court has articulated that a three- prong test is to be applied when a defendant asserts that the State has lost or failed to preserve potentially exculpatory evidence. *Deberry,* 457 A.2d at 750; *see also Bailey v. State,* Del.Supr., 521 A.2d 1069, 1090-91 (1987). Claims with respect to evidence lost or not preserved are subject to a three-fold inquiry evaluated in the context of the entire record of a given case: (i) would the requested material, if extant in the possession of the State at the time of the defense request, have been subject to disclosure; (ii) was the government duty bound to preserve the material; and (iii) if there was a duty to preserve and the duty was breached, what consequences should flow from the breach. *Deberry,* 457 A.2d at 750; *see also Hammond v. State,* Del.Supr., 569 A.2d 81, 86-87 (1989).

The consequences flowing from a found failure to preserve evidence are then to be determined under a separate three-part analysis of:

a) the degree of negligence or bad faith involved;

b) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and

c) the sufficiency of the other evidence produced at trial to sustain the conviction.

*Bailey,* 521 A.2d 1091. In applying these factors in the context of a timely raised objection, a trial court must weigh the nature of the State's conduct against the degree of prejudice to the accused. *Deberry,* 457 A.2d at 750. If the State is found to have been responsible for the loss of the evidence *and* the defendant has been materially prejudiced, due process requires the court to instruct the jury in accordance with *Hammond,* 569 A.2d at 90- 91 (citing *Deberry,* 457 A.2d at 754).

**3 (8) The State responds on alternative grounds that defendant's reliance on *Deberry* is misplaced. The State asserts that the police were under no duty to record McDuffie's oral statement; hence its loss is not akin to failure to collect a blood sample, *see Lolly v. State,* Del.Supr., 611 A.2d 956 (1992), or to preserve a damaged vehicle, *Hammond,* 569 A.2d at 86- 87, since the tape was never played back by the police. The State also contends that *Deberry* has no application here, where McDuffie

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

A - 37

625 A.2d 280 (Table)
Unpublished Disposition

(Cite as: 625 A.2d 280, 1993 WL 132986 (Del.Supr.))

denied having incriminated defendant when interviewed by Harding and Harding's notes to the contrary were available to defendant at trial. The evidence, if available, would have been incriminating, not exculpatory; and a *Deberry* instruction would have skewed the record and the jury's role in resolving issues of credibility arising from contradictory testimony. Finally, the State points out that McDuffie's testimony was at best cumulative given the testimony of other eyewitnesses that defendant had struck victim in the head with a bat.

(9) Assuming, *arguendo*, a found failure of the police to preserve the statement, we find no *Deberry* violation to have occurred. Officer Harding testified from notes, yet defendant did not avail himself of the notes to explore their probative value or the reliability of Officer Harding's testimony. Furthermore, Mary Adams ("Adams"), McDuffie's mother, present when the police took her son's statement, testified that her son told the police that he had seen Warren strike the victim with the bat. Finally, the record fully supports the court's finding that the officer's notes and Adams' testimony was sufficient secondary evidence to overcome any arguable prejudice to Warren from the statement having been erased. Thus, the "lost" evidence was at best cumulative and a lost evidence instruction consistent with *Deberry* was clearly not required.

(10) Warren next contends that he was unfairly prejudiced by the trial court's admission of portions of a witness' transcribed, out of court statement. Dwayne Brooks ("Brooks"), appearing as a defense witness, testified that Warren was acting as a peace-maker in attempting to break up the initial fight in the parking lot. The State, on cross-examination of Brooks, offered into evidence Brooks' out of court statement to the police that Warren and his companions had, over the hours immediately preceding the melee, been "getting ready to fight." The trial court admitted Brooks' out of court statement over defendant's objection that it should have been excluded under D.R.E. 404(b) as either "irrelevant" or "unduly prejudicial." *See Getz v. State*, Del.Supr., 538 A.2d 726 (1988). On appeal Warren also makes a further contention that the trial court's failure to give a proper limiting instruction to the jury

concerning the "other bad acts" evidence was plain or fundamental error, notwithstanding defendant's failure to take an exception to the court's limiting instruction as given. *Kornbluth v. State*, Del.Supr., 530 A.2d 556, 558 (1990); *Weber v. State*, Del.Supr., 547 A.2d 948, 956 (1988).

**\*4 (11) The parties agree that our standard of review of this issue is for abuse of discretion; and we find none in the Superior Court's ruling admitting into evidence the transcript of the police recording of Brooks' interview. We find the trial court to have properly applied the six-part analysis articulated in *Getz*. The "other acts" evidence was relevant, and admissible, both as rebuttal evidence to the defense that Warren was playing the role of "peace- maker" immediately before the melee occurred and as proof of Warren's motive and his state of mind since he was on trial for murder in the first degree. *Cf. Diaz v. State*, Del.Supr., 508 A.2d 861, 865 (1986). The trial court was also correct in finding that the evidence of Warren's prior acts that night met the requirements of *Renzi v. State*, Del.Supr., 320 A.2d 711, 712 (1974). The evidence was plain, clear and conclusive, and the prior acts all occurred within approximately two hours of the homicide. Finally, the record confirms that the court correctly applied the balancing test of *Getz*. The court found that the evidence's relevance substantially outweighed its danger of unfair prejudice. The court further gave a limiting instruction, cautioning the jury not to use Brooks' statement as evidence of bad character or criminal disposition. *Weber*, 547 A.2d at 956.

(12) Lastly, we address Warren's contention that the baseball bat could not, as a matter of law, be considered a deadly weapon at the time of the alleged offense. The General Assembly has defined the term "deadly weapon" in 11 *Del.C.* § 222(5). [FN2] Recently this Court held that a baseball bat satisfied the definition of a deadly weapon as embodied in section 222(5). *State v. Anderson & Travis*, Del.Supr., No. 97, 1992, Walsh, J. (Oct. 7, 1992). We decline defendant's invitation that we overturn *Anderson*. We find that, when a baseball bat is used as a bludgeon as the record confirms was done here, a baseball bat becomes a deadly weapon.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

A-38

625 A.2d 280 (Table)
Unpublished Disposition

(Cite as: 625 A.2d 280, 1993 WL 132986 (Del.Supr.))

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and hereby is,

AFFIRMED.

> FN1. Harding explained the erasure of the tape as follows: "When I was doing these tapes, I had numerous tapes, apparently when I finished interviewing Andre McDuffie, I didn't label his tape with his name. So, assuming that that tape was blank, I assume that I recorded over it because I no longer have the tape."

> FN2. The General Assembly amended the definition of "deadly weapon" after the date of the commission of the crime in this matter but before trial was held. 68 *Del.Laws* c. 378. This statutory change, however, does not affect our decision of this issue since we rule that a baseball bat could be a deadly weapon under either version of the law.

625 A.2d 280 (Table), 1993 WL 132986 (Del.Supr.), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

A-39

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOSEPH M. WALLS,                      )
                                      )
            Petitioner,               )
                                      )
v.                                    )  Civil Action No. 90-423-RRM
                                      )
WARDEN WALTER REDMAN and              )
CHARLES M. OBERLY, III,               )
                                      )
            Respondents.              )

---

**MEMORANDUM OPINION**

---

Joseph M. Walls, pro se petitioner.

Loren C. Meyers, Esquire, State of Delaware Department of Justice, Wilmington, Delaware, for respondents.

---

Dated: March 25, 1993

A- 248

*McKelvie*

McKELVIE, District Judge

This is a habeas corpus case. The petitioner, Joseph M. Walls, a state prisoner, was convicted of first degree burglary, two counts of first degree robbery, two counts of second degree kidnapping, two counts of first degree assault, possession of a deadly weapon during the course of a felony, conspiracy, and terroristic threatening. He was sentenced to sixty-two years in prison. On appeal, the Delaware Supreme Court reversed the kidnapping convictions and affirmed the remainder. Walls v. State, 560 A.2d 1038 (Del. 1989).

The petitioner asserts four grounds for relief: 1) that the State failed to prove beyond a reasonable doubt all of the elements of conspiracy, as the petitioner's indictment had charged the petitioner with conspiring with "Efrain Hernandez," who was not convicted of either conspiracy or any other offenses arising from the incident giving rise to the charges against the petitioner and Hernandez; 2) that the State failed to prove beyond a reasonable doubt all of the elements of robbery, as the plaintiff's indictment charged that "Efrain Hernandez" had displayed the deadly weapon during the incident giving rise to the petitioner's and Hernandez' charges, and as Efrain Hernandez was not convicted as described above; 3) that the burglary conviction should be vacated as the State introduced important evidence that the incident happened at night only in the rebuttal phase of the trial; and, 4) that the Delaware Supreme Court improperly affirmed his conspiracy and robbery convictions by constructively amending the indictment such that it charged the petitioner for acting with "someone" rather than "Efrain Hernandez" as in the original indictment. In their

Answer, the respondents contend, inter alia, that the petitioner has not exhausted state remedies regarding the fourth claim.

The petitioner bears the burden of showing exhaustion of available state remedies. Landano v. Rafferty, 897 F.2d 661, 668 (3rd Cir.), cert. denied, 498 U.S. 811 (1990). In order to exhaust state remedies, the petitioner must raise, in state court, the factual and legal premises of the claims asserted in federal proceedings. Gibson v. Scheidemantel, 805 F.2d 135, 138 (3rd Cir. 1986). Such claims must be "fairly presented" before the state court. Picard v. Connor, 404 U.S. 270, 275 (1971). If a petition contains both exhausted and unexhausted claims, it must be dismissed in its entirety unless the petitioner voluntarily dismisses the unexhausted claims. Rose v. Lundy, 455 U.S. 509, 520 (1982).

This petition contains the following unexhausted claim: that the Delaware Supreme Court affirmed conviction on a theory not presented to the jury; specifically, that the indictment could be read to accuse the petitioner of conspiracy with "someone" rather than Efrain Hernandez. The petitioner argued in his brief on appeal that the indictment did not fairly inform the petitioner of the charges against him, implicitly, if not explicitly, raising the argument that the jury had been presented with a charge not specified in the indictment. See Opening Brief of Appellant on Appeal from the Superior Court of Delaware, at 24-25 (Aug. 26, 1988). The petitioner further claims, however, that it was the Supreme Court that erred in effectively modifying the indictment; as evidence, the petitioner cites language in the Delaware Supreme Court Opinion. The petitioner has not brought this alleged error of the Delaware Supreme Court to the attention of Delaware Courts. Resolving doubts against

exhaustion, and noting that the claim on habeas contains material factual allegations not presented to the State Court, the Court finds this claim to be unexhausted.

In the interests of judicial economy, the Court will dismiss the unexhausted claim after dismissing the exhausted claims on the merits.

## FACTS

On the evening of December 14, 1985, the Pancoast family, Jeffrey, Anna, and their six year old son Justin, entertained a friend, Dmytro Shevchenko, Jeffrey's father, and Jeffrey's sister at their home in Newark, Delaware. At about 8:30 - 8:45 p.m., Jeffrey's father and sister left the house. About two minutes after Jeffrey's father and sister left, there was a knock on the door. Anna Pancoast went to answer, believing that Jeffrey's father had returned for his cigarettes.

As Anna opened the door, the petitioner, who was carrying a metal baseball bat, pushed his way inside, knocking Anna over a Christmas tree. He then grabbed Anna and threw her into a coffee table. He was followed by another man (alleged to have been Efrain Hernandez at trial) carrying a silver pistol. When Jeffrey protested, the petitioner promptly struck him on the side of the head with the bat, opening a gash on his head. Anna pleaded with the assailants, "don't shoot us; don't shoot us"; Justin screamed and yelled, "what are these guys doing here, Daddy." Trial Transcript Volume C, at p.74. The petitioner then told Anna and Justin to sit on the sofa, whereupon the petitioner's accomplice held a handgun to Justin's head, threatening to shoot him if the others would not cooperate. Jeffrey and Dmytro were then ordered to turn and face the wall, after which the petitioner

demanded and took money from each of them. After taking the money, the petitioner ripped a telephone from the wall and warned the victims not to look out the window or they would be shot. As the petitioner left he wished his victims a "Merry Christmas."

One week later, the Pancoasts spotted the petitioner at a gas station near their home. The petitioner, upon seeing the Pancoasts, hurriedly drove away. The petitioner did not turn on his lights, despite darkness, until he had driven some distance.

At trial, both the petitioner and Hernandez denied any participation in the crime. The petitioner claimed that at the time of the incident he and some family members had been helping him to move into a new apartment. Hernandez claimed to have been living in New York. The jury found the petitioner guilty of all charges brought against him, but failed to reach a unanimous verdict as to any of the charges against Hernandez.

## DISCUSSION

The Court need only address the merits of claims one, two, and three as enumerated above.

I.    Failure to prove beyond a reasonable doubt all of the elements of conspiracy

In this claim, the petitioner notes that his indictment charged him with conspiring specifically with Efrain Hernandez. He argues, therefore, that the State had to prove beyond a reasonable doubt not only that the petitioner had conspired with someone, but had conspired with Hernandez. Specifically, he contends that in naming Efrain Hernandez in the indictment, "Efrain Hernandez" became an attendant circumstance of the crime. The petitioner would conclude that as the State failed to convict Hernandez of conspiracy or

4

indeed any crime, it necessarily could not have convicted the petitioner of conspiracy with Hernandez.

He also contends, in a related argument, that he could not have been convicted of conspiracy unless at least one other person also was convicted of conspiracy. He relies primarily on statements from two New Jersey state court opinions: "[T]he concept that one cannot conspire with himself alone is obviously sound and unrebuttable." State v. La Forge, 443 A.2d 269, 270 (N.J. 1981) (quoting State v. Hawkins, 428 A.2d 1322, 1324 (N.J. Super. Ct. App. Div. 1981)). "If a jury finds that the State failed to prove beyond a reasonable doubt that Doe conspired with Roe, logic defies an explanation of how it can find proof beyond a reasonable doubt that Roe conspired with Doe." Hawkins, 428 A.2d at 1324.

The "Due Process Clause protects the accused against conviction except upon proof of every fact necessary to constitute the crime for which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Correspondingly, as the petitioner challenges the sufficiency of the evidence, he may obtain relief only if, viewing the facts in the light most favorable to the prosecution, no rational trier of fact could have found every element of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1978). The applicability of the reasonable doubt standard depends, however, on how the State has defined the material elements of the offense charged. McMillan v. Pennsylvania, 477 U.S. 79, 85 (1986); Patterson v. New York, 432 U.S. 197, 201-02 (1977). Nevertheless, there are limits to this State's power in this regard. Id. at 86.

Under Delaware law, a defendant may be convicted of conspiracy despite the State's failure to apprehend or convict other conspirators. 11 Del.C. § 523(b). In this case, the Delaware Supreme Court interpreted that statute such that it was permissible to convict the petitioner of conspiracy in the absence of a conviction against Hernandez. Walls v. State, 560 A.2d at 1047-48. The State Court's interpretation of State law binds this Court. Mullaney v. Wilbur, 421 U.S. 684, 690-91 & n.11 (1975). Delaware has determined, therefore, that it is not material that Hernandez himself was named as a conspirator, i.e., the identity of a co-conspirator, or the existence of a convicted co-conspirator as opposed to the plain existence of a co-conspirator, is not a material element of the crime of conspiracy.

Moreover, Delaware's definition of the crime of conspiracy and determination of conspiracy's material elements does not transgress the limits of due process. The essential element of the crime in this case is the fact of conspiracy, not the identity of the conspirators or the existence of convicted co-conspirators. The identity or status under law of the co-conspirator is not linked to the severity of punishment accompanying the crime. See McMillan, 477 U.S. at 84.

As to the petitioner's claim that Delaware could not logically have convicted him of conspiracy without convicting a co-conspirator, the petitioner relies principally upon the rules of other states. See, e.g., Laforge, supra. Petitioner has not shown, nor can he show, that Delaware may not adhere to its rule despite the common law rule cited by the plaintiff. See Government of Virgin Islands v. Hoheb, 777 F.2d 138, 142 n.6 (3d Cir. 1985).

Given that Jeffrey Pancoast, Anna Pancoast, and Dmytro Shevchenko all testified that they saw two men enter the house, one of whom was the petitioner, and carry on with the acts described <u>supra</u>, a reasonable jury could have concluded that the petitioner was guilty of conspiracy.

II.    Failure to prove beyond a reasonable doubt all of <u>the elements of the crime of robbery</u>

This argument is essentially a rehash of the one previously discussed. The petitioner claims that because his indictment's robbery count had specified that Efrain Hernandez had displayed what appeared to be a deadly weapon, and because Efrain Hernandez was never convicted of having displayed such a weapon, the petitioner should not have been convicted of robbery. The petitioner appears to recognize that indictment as a principle does not preclude conviction as an accomplice, or <u>vice-versa</u>. 11 Del. C. § 275. Delaware law further provides that it is no defense to accomplice liability that one's accomplice has not been convicted or has been acquitted. 11 Del.C. § 272(2).

This claim fails for reasons similar to those described above with regard to conspiracy. It is not essential that a state obtain the conviction of one accomplice in order to obtain conviction of another. <u>See, e.g.</u>, <u>United States v. Corsino</u>, 812 F.2d 26, 32 (1st Cir. 1987).

For the reasons discussed <u>supra</u>, a reasonable jury could have concluded that the petitioner was guilty of the crime of robbery.

III.    Improper Introduction of Evidence of Burglary

The petitioner claims that the State improperly introduced evidence relevant to the burglary count.

Under Delaware law, "[a] person is guilty of burglary in the first degree when he knowingly enters or remains unlawfully in a dwelling at night . . . ."  11 Del.C. § 826. "Night is defined as the period between 30 minutes after sunset and 30 minutes before sunrise." 11 Del.C § 829. The prosecution provided evidence of the official time of sunset in the rebuttal portion of its case.

The petitioner claims that the failure to introduce evidence of the official time of sunset is reversible error under Delaware law, Blankenship v. State, 447 A.2d 428, 433 (Del. 1982), and consequently that it was improper to introduce evidence of the time of sunset, an essential element of the crime of burglary, in the rebuttal stage of the prosecution. Bailey v. State, 440 A.2d 997, 1000-04 (Del. 1982).

The petitioner was not denied a fair trial as to the burglary charge. Unlike the case in Blankenship, in which an important issue in the case was whether the burglary occurred at night and in which the time of sunset was of crucial importance, in this case there was never an issue of whether the incident giving rise to the crimes took place at night. There was testimony that the incident took place around 7:30 - 8:00 p.m. in December, when the days are very short. Jeffrey Pancoast testified that the incident occurred about two hours after it had grown dark. Trial Transcript Volume C, at p.70. Nonetheless (irrespective of this Court's interpretation and distinction of Blankenship), it is not a violation of due process

for a trial court judge to accept on rebuttal evidence that could have been presented in the case-in-chief. See United States v. Brock, 833 F.2d 519, 522 (5th Cir. 1987).

The Court will issue an Order in accordance with this Opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED

Mar 25   4 35 PM '93

CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

JOSEPH M. WALLS,                    )
                                    )
            Petitioner,             )
                                    )
v.                                  )   Civil Action No. 90-423-RRM
                                    )
WARDEN WALTER REDMAN and            )
CHARLES M. OBERLY, III,             )
                                    )
            Respondents.            )

## ORDER

For the reasons stated in the accompanying Opinion of this date,

**IT IS HEREBY ORDERED** as follows:

1. Petitioner's application for a writ of habeas corpus is denied and the petition is dismissed.

2. No probable cause exists to appeal.

3. The Clerk shall mail a copy of the Court's Memorandum Opinion and this Order to the petitioner and to Loren C. Meyers, Esquire, Deputy Attorney General, Department of Justice, 820 N. French Street, Wilmington, Delaware 19801.

United States District Judge

Dated:   March 25, 1993

A-258

SUPERIOR COURT
OF THE
STATE OF DELAWARE

CHARLES H. TOLIVER, IV
JUDGE

DANIEL L. HERRMANN COURT HOUSE
WILMINGTON, DELAWARE

April 2, 1998

Joseph M. Wall
Delaware Correctional Center
RD-1 - Box 500
Smyrna, Delaware 19977

Re:  **In the Matter of the Petition of Joseph M. Wall**
C. A. No 98M-03-008
Petition for Writ of Habeas Corpus

Dear Mr. Wall:

The Court is in receipt of your Petition for Writ of Habeas Corpus filed in the Prothonotary's Office on March 19, 1998. Unfortunately, I am unable to grant the relief you seek.

Your petition is denied because it fails to state a claim upon which such a writ may be issued. The Writ of Habeas Corpus tests the legality of the detention of the defendant. 10 Del. C. §6902. In your petition, you state that you have exhausted all available remedies, and that Superior Court Criminal Rule 61 (postconviction relief) and the appeal process were not available or adequate remedies. Your petition does not challenge the viability of your confinement. Instead, it challenges the viability of the underlying conviction. The Writ of Habeas Corpus is not the avenue through which these challenges should be made.

The record shows that you were convicted on October 6, 1986, and the sentencing order of March 8, 1988 shows that you are being legally detained. Moreover, in the absence of extraordinary circumstances, a defendant who is incarcerated pursuant to a judgment of conviction that is legal on its face, may not have the conviction re-examined in light of circumstances that are not in the record, through petition for Writ of Habeas Corpus. Curan v. Wooley, Del. Supr.,104 A. 2d 771, 773.

A-267

Joseph M. Walls
April 2, 1998
Page Two


Although the above stated reasons are sufficient to deny issuance of the writ, I will briefly address your claim that relief under Rule 61 and appeal to the Delaware Supreme Court were unavailable or inadequate. The claims you raise in the present petition were previously raised and adjudicated either by this Court on postconviction motion or by the Delaware Supreme Court on Appeal. The decisions by this Court were adequate to the extent that they were reviewed and affirmed by the Supreme Court (when you chose to appeal them). Finally, you argue that this State's highest court made errors in its decisions. To the extent that you wish to challenge the decisions of the Delaware Supreme Court, you may not do so through a petition for Writ of Habeas Corpus nor through an appeal to this Court.

Accordingly, because the Court finds that you are presently legally detained and have not stated a basis for the issuance of a Writ of Habeas Corpus, your application must be, and is hereby, **DENIED**.

**IT IS SO ORDERED.**

Sincerely yours,

Charles H. Toliver, IV
Judge

CHT, IV/jp
cc: Prothonotary - Civil Division

A-268

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOSEPH M. WALLS, | § | No. 175, 1998 |
| | § | |
| Petitioner Below, | § | Court Below: Superior Court of |
| Appellant, | § | the State of Delaware in and for |
| | § | New Castle County |
| v. | § | |
| | § | C.A. No. 98M-03-008 |
| STATE OF DELAWARE, | § | |
| | § | |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted: March 2, 1999
Decided:   March 17, 1999

Before **VEASEY**, Chief Justice, **HOLLAND** and **HARTNETT**, Justices.

### O R D E R

This 17th day of March 1999, upon consideration of the briefs of the parties,

it appears to the Court that the judgment of the Superior Court should be affirmed

on the basis of and for the reasons set forth in the well-reasoned decision of the

Superior Court dated April 2, 1998.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court be, and the same hereby is,

**AFFIRMED.**

BY THE COURT:

E. Norman Veasey
Chief Justice

A-272

*A - 10/3/91*
*Pancoast ccr*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOSEPH M. WALLS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 90-423-RRM |
| | ) | |
| STANLEY TAYLOR, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Respondent | ) | |

## ORDER DENYING MOTION FOR LEAVE TO REFILE HABEAS PETITION

This is a habeas corpus appeal. Petitioner, Joseph M. Walls is a state prisoner

incarcerated at the Delaware Correctional Center in Smyrna, Delaware.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 1985, two men interrupted a party hosted by Jeffrey and Anna

Pancoast at their home in Newark, Delaware. At the house were Jeffrey and Anna;

Jeffrey's son, Justin; Jeffrey's father and sister; and a family friend, Dmytro Shevchenko.

At around 8:30 to 8:45, Jeffrey's father and sister left the house. Shortly thereafter, Anna

answered a knock at the door, believing that Jeffrey's father had returned for his

cigarettes.

As Anna opened the door, the petitioner, carrying a metal baseball bat, pushed his

way inside house, knocking over Anna and a Christmas tree. The petitioner was followed

by a second man carrying a silver pistol. The state alleged at trial that this second man

*A-278*

was Efrain Hernandez. After entering the house, petitioner grabbed Anna and threw her onto a coffee table. Petitioner then struck Jeffrey on the side of the head with the bat. After this flurry, petitioner instructed Anna and Justin to sit on the sofa, whereupon the second man held the gun to Justin's head threatening to shoot him if the others would not cooperate. Petitioner then demanded and took money from Jeffrey and Dmytro.

One week later, the Pancoasts spotted the petitioner at a gas station near their home. The petitioner, upon seeing the Pancoasts, hurriedly drove away. Despite darkness, the petitioner did not turn on his lights until he had driven some distance.

At trial, both the petitioner and Hernandez denied any participation in the crime. The petitioner claimed that at the time of the incident he was moving into a new apartment with the aid of some family members. Hernandez claimed to have been living in New York.

In October of 1986, the jury convicted Joseph M. Walls of first degree burglary, two counts of second degree kidnaping, two counts of first degree assault, possession of a deadly weapon during the commission of a felony, second degree conspiracy, and terroristic threatening. A mistrial was declared as to Hernandez because the jury was unable to reach a unanimous accord as to the charges against him.

On March 22, 1988, Walls, represented by counsel, filed an appeal to the Delaware Supreme Court. Walls argued that the first degree burglary conviction must be vacated for lack of evidence, that the prosecutor's closing remarks were improper, the trial court

erred in failing to sever the charges against Hernandez, and that the trial court improperly

instructed the jury as to the legal elements of the kidnaping charge. On June 1, 1989, the

-Delaware Supreme Court reversed Wall's convictions for second degree kidnaping, and

affirmed the remaining convictions. See Walls v. State, 560 A.2d 1038 (Del. 1989).

On August 3, 1990, Walls applied for federal habeas relief. Walls's petition

contained four grounds for relief. First, Walls claimed the State failed to prove all of

elements of conspiracy alleged in his indictment. Walls argued that the State did not meet

its burden because the indictment specifically charged him of conspiring with Hernandez.

Thus, according to Walls, Hernandez became an attendant circumstance of the crime.

Walls argues that the State could not properly convict him of conspiracy because the State

failed to convict Hernandez of conspiracy or any of the underlying counts arising from

the incident. Second, Walls claimed that the State failed to prove beyond a reasonable

doubt all of the elements of the robbery. In a restatement of his first argument, Walls

contends that because his indictment's robbery count specified that Hernandez displayed

a deadly weapon and because Hernandez was never convicted of having displayed such a

weapon, he should not have been convicted of robbery. Third, Walls argued that the

burglary count should be vacated because the State introduced evidence that the incident

happened at night only in the rebuttal phase of the trial. Fourth, Walls argued that the

Delaware Supreme Court improperly affirmed his conspiracy and robbery convictions by

constructively amending the indictment such that it charged the petitioner for acting with "someone" rather than with "Efrain Hernandez" as in the original indictment.

On May 29, 1992, prior to this court's decision on the federal habeas corpus petition, Walls filed for state post-conviction relief.

On March 25, 1993, in a Memorandum Opinion, this court dismissed each of the claims in the petition. See Walls v. Redman, Civ. Act. No. 90-423-RRM, (March 25, 1993). As to the first two claims, the court noted that the State need not obtain a conviction of one accomplice to obtain a conviction of another. That is, Walls's conviction is not defective simply because the state failed in its case against Hernandez. The court found that the State presented evidence from which a reasonable jury could conclude that two men entered the house, the petitioner and a man carrying a gun, and committed acts that could constitute conspiracy and robbery. As to the third claim, the court found that there was no dispute about whether the incident took place at night. In the state's case in chief, witnesses testified that the incident took place around 7:30 to 8:00 p.m. in December, when the days are short. Further, Jeffrey Pancoast testified that the incident occurred about two hours after it had grown dark. The court dismissed the fourth claim as being unexhausted.

On December 20, 1993, the Superior Court denied Walls's petition for state post-conviction relief. See State v. Walls, Cr.A. IN86-03-1204R1 through IN86-03-1213R1, 1993 WL 544019 (Del. Super. Dec. 20, 1993). Walls did not immediately appeal from

this judgment. According to the Delaware Supreme Court, Walls filed a motion for

reargument, more than a year later. See Walls v. State, IN86-03-1204R1 through IN86-

03-1213R1. 1996 WL 21036, **1 (Del. Supr. Jan. 4, 1996). The Superior Court treated

that motion as a second petition for post conviction relief. See id. The Superior Court

denied that motion. In 1995, Walls appealed both orders to the Delaware Supreme Court.

In the appeal, Walls raised nine issues: 1) his convictions of assault in the second degree

and terroristic threatening had to be reversed because they were lesser-included offenses

of robbery in the first degree; 2) his conviction of robbery in the first degree had to be

reduced to robbery in the second degree and his conviction of conspiracy had to be

reversed, because the jury failed to find his codefendant guilty of the charges; 3) the trial

judge created an impermissible conclusive presumption when he instructed the jury that a

handgun and a baseball bat were deadly weapons; 4) the trial judge erred in instructing

the jury on the elements of possession of a deadly weapon during the commission of a

felony; 5) the Delaware Supreme Court erred by amending the indictment in his direct

appeal; 6) the Superior Court erred in holding an in camera hearing without the defendant

being present; 7) the Superior Court's failure to comply with Superior Court Criminal

Rule 10 deprived it of the jurisdiction to try him; 8) the Superior Court erred in not

severing the joint trials of Walls and his codefendant Efrain Hernandez; and 9) trial

counsel was constitutionally ineffective. See id. On January 4, 1996, the Delaware

Supreme Court affirmed both orders of the Superior Court.

On March 19, 1998, Walls filed a petition for state habeas corpus relief. On April 2, 1998, Superior Court denied the petition stating that Walls had already litigated the issues presented either on his direct appeal or in his appeal for post-conviction relief. On March 17, 1999, the Delaware Supreme Court affirmed that decision.

On March 20, 2000, Walls filed a motion in this court for leave to re-file his federal petition for a writ of habeas corpus. On February 8, 2001, the respondent answered the petition. On May 7, 2001, Walls filed a response. On May 10, 2001, Walls filed a motion for sanctions against the state.

This is the court's decision on Walls's motion for leave to re-file the petition and Walls's motion for sanctions.

II. DISCUSSION

A. Motion to Re-File

Walls contends that the March 25, 1993 order of this court dismissed his entire petition because it contained one unexhausted claim. According to Walls, "once a petitioner has presented all his 'unlitigated' or 'unexhausted' claims before the state courts, the petitioner has a 'right to refile the petition' before the federal habeas court." Walls seeks to present eight claims:  1) the judge improperly instructed the jury as to possession of a deadly weapon during the commission of a felony; 2) the statements in the instructions that a baseball bat and a handgun are "deadly weapons" constituted a conclusive presumption; 3) the Delaware Supreme Court denied him due process of law

A-283

by amending his indictment on appeal; 4) because Hernandez was acquitted of all of the

charges, Walls could not be convicted of first degree robbery and second degree

conspiracy; 5) the failure to arraign him divested the Superior Court of jurisdiction; 6) the

prosecution failed to disclose exculpatory evidence and prosecution witnesses committed

perjury; 7) the search warrant authorizing the search of his house was not supported by

probably cause; and 8) trial and appellate counsel provided ineffective assistance. These

claims repeat those presented in Walls's 1995 appeal to the Delaware Supreme Court.

Respondent contends that in the March 25, 1993 order the court ruled on merits of

three claims. Therefore, Walls's current motion constitutes a successive petition under 28

U.S.C. § 2244(b)(1) and (b)(2).[1]  As such, respondent argues, this court lacks jurisdiction

---

[1]The relevant portion of the statute states:

(b)(1) A claim presented in a second or successive habeas corpus
application under section 2254 that was presented in a prior application
shall be dismissed.

 (2) A claim presented in a second or successive habeas corpus application
under section 2254 that was not presented in a prior application shall be
dismissed unless--

 (A) the applicant shows that the claim relies on a new rule of
constitutional law, made retroactive to cases on collateral review by the
Supreme Court, that was previously unavailable;  or

 (B)(i) the factual predicate for the claim could not have been discovered
previously through the exercise of due diligence;  and

 (ii) the facts underlying the claim, if proven and viewed in light of the
evidence as a whole, would be sufficient to establish by clear and
convincing evidence that, but for constitutional error, no reasonable
factfinder would have found the applicant guilty of the underlying offense.
28 U.S.C. § 2244(b).

to consider the merits of Walls's arguments. According to respondent, under 28 U.S.C.

2244(b)(3),[2] Walls must apply to the court of appeals for leave to file a successive

petition.0 Alternatively, respondent argues that even if Walls's application is not covered

by § 2244(b) it fails because it is untimely under 28 U.S.C. § 2244(d).[3]

---

[2] The relevant portion of the statute states:
(3)(A) Before a second or successive application permitted by this section
is filed in the district court, the applicant shall move in the appropriate
court of appeals for an order authorizing the district court to consider the
application.

28 U.S.C. § 2244(b)(3)(A).

[3] The relevant portion of the statute states:
  (d)(1) A 1-year period of limitation shall apply to an application for a
writ of habeas corpus by a person in custody pursuant to the judgment of
a State court. The limitation period shall run from the latest of--
  (A) the date on which the judgment became final by the conclusion of
direct review or the expiration of the time for seeking such review;
  (B) the date on which the impediment to filing an application created by
State action in violation of the Constitution or laws of the United States is
removed, if the applicant was prevented from filing by such State action;
  (C) the date on which the constitutional right asserted was initially
recognized by the Supreme Court, if the right has been newly recognized
by the Supreme Court and made retroactively applicable to cases on
collateral review; or
  (D) the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due
diligence.
  (2) The time during which a properly filed application for State post-
conviction or other collateral review with respect to the pertinent
judgment or claim is pending shall not be counted toward any period of
limitation under this subsection.

28 U.S.C. § 2244(d)(1).

Upon review of the record, the court finds that the March 25, 1993 order of this court dismissed three of Walls 1990 habeas petition on the merits. Therefore, this motion constitutes a successive petition under § 2244(b).

Moreover, effective April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), amended 28 U.S.C. § 2254 to impose a one year limitations period on the filing of federal habeas corpus petitions. See 28 U.S.C. § 2244(b). In applying section 2244(d), the Third Circuit concluded that if a prisoner's conviction became final prior to the enactment of AEDPA, a court may not dismiss as untimely a section 2254 petition filed on or before April 23, 1997. See Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998). This rule gives prisoners whose conviction became final prior to the enactment of AEDPA one full year with notice to file petitions. See id. at 112. Petitions filed after the one-year grace period, however, are subject to dismissal for failure to adhere to the new timing limitations.

Because Walls appealed from his conviction, the one year period began when the 90 day period expired in which he could have applied for a writ of certiorari from the United States Supreme Court. The Delaware Supreme Court issued its opinion affirming Walls's convictions on June 1, 1989. Therefore, Walls's conviction became final on August 30, 1989. Because this date is before the effective date of AEDPA, Walls had until April 23, 1997 to file this federal habeas petition.

Walls's state post-conviction litigation does not change this result. Pursuant to 28 U.S.C. § 2244(d)(2),[4] the one year statute of limitations is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim. AEDPA's "tolling prvision does not . . . revive the limitations period (i.e. restart the clock at zero); it can only serve to pause a clock that has not yet fully run." Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998); see also Jones v. Snyder, Civ. Act. No. 00-179-JJF (D. Del. Dec. 13, 2000). In this case, the Delaware Supreme Court affirmed the denial of Walls's state post-conviction appeals on January 4, 1996.[5] Because this date is before the enactment of AEDPA, Walls had until April 23, 1997 in which to file this federal habeas petition.

For purposes of applying AEDPA's statute of limitations, the Third Circuit stated that a pro se prisoner's petition is deemed filed "the moment it is delivered to the prion officials for mailing to the district court." Burns, 134 F.3d at 113. Absent proof of mailing, this court has treated the date on the petition as the date of filing. See. e.g., Briggs v. Snyder, Civ. Act. No. 99-918-JJF, Mem. Op. at 5 (Dec. 27, 2000); Fennel v.

---

[4] The relevant portion of the statute states:
(d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.
28 U.S.C. § 2244(d)(2).

[5] The court finds that the March 17, 1998, appeal for state habeas relief was not properly filed.

A - 287

Snyder, Civ. Act. No. 99-289-SLR, order at 4 (D. Del. Feb 8, 2000). In this case, the motion for leave to re-file a petition for a writ of habeas corpus is dated March 17, 2000. This is well after the expiration of the statute of limitations.

Even if the court were to construe Walls's 1998 petition for state habeas corpus as properly filed, Walls could not have effectively tolled the statute of limitations. The court find that more than a year elapsed after the end of the one year grace period. Eleven months passed between the April 23, 1997 end of the one-year grace period and filing of his March 19, 1998 state habeas petition and exactly one year passed between the March 17, 1999 denial of state habeas by the Delaware Supreme Court and the March 17, 2000 date of his motion to re-file his federal habeas petition. Accordingly, the court concludes that the petition is time barred under § 2244(d)(2).

B. Motion for Sanctions

On May 10, 2001, Walls filed a motion for sanctions against Deputy Attorney General Loren Meyers and the State of Delaware's Department of Justice. Walls argues that Meyers litigated against his petition for habeas corpus in a manner intended to delay the petition and cause expense to the petitioner. According to Walls, Meyers's arguments were deceptive and unsupported by precedent. Walls requests that Meyers and the Delaware Department of Justice reimburse him for the costs of litigating his federal appeals.

The court can find no support for Walls's arguments.

11

A - 288

For the reasons stated above, IT IS HEREBY ORDERED:

1. Walls's motion for leave to re-file petition for writ of habeas corpus (D.I. 22) is denied:

2. Walls's motion for sanctions (D.I. 44) is denied.

3. The court will not issue a certificate of appealability because Walls has not made "a substantial showing of the denial fo a constitutional right" so as to merit the issuance of a certificate of appealability.


_____
UNITED STATES DISTRICT JUDGE

June 21, 2001

12

A-289

APS-263                                          August 15, 2002

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

C.A. No. 01-4335

JOSEPH H. WALLS

v.

WARDEN WALTER REDMAN, et al.

(D.DE. Civ. No. 90-cv-00423)

Present:

Submitted are:   SLOVITER, RENDELL, AND FUENTES, CIRCUIT JUDGES

(1)     Appellant's request for a certificate of appealability under 28 U.S.C. §
        2253(c)(1), which contains a request for appointment of counsel; and

(2)     Appellant's motion to compel transfer, pursuant to Rule 23, Fed. R. App. P.

in the above-captioned case.

                                 Respectfully,


                                 Clerk

MMW/BNBas/cmh


_____ORDER_____

The foregoing - Appellant's request for a certificate of appealability is denied. See Slack
v. McDaniel, 529 U.S. 473, 484 (2000). The petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254 is time-barred under the applicable statute of limitations. See Burns
v. Morton, 134 F.3d 109 (3d Cir. 1998). Notably, Appellant's § 2254 petition would be
considered untimely even if his 1998 petition for state post-conviction relief had tolled
the one-year limitations period. Appellant has failed to establish "extraordinary

A-308

R-4/2005

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

April 18, 2005

Mr. Joseph M. Walls
Prisoner ID 107897
1181 Paddock Road
Smyrna, DE  19977

Re:  Joseph M. Walls
     v. Delaware
     No. 04-8552

Dear Mr. Walls:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

*William K. Suter*

**William K. Suter**, Clerk

A-316